IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

v.                               CIV 19-0976 JCH/KBM
                               CR  16-1432 JCH

MANUEL RUIZ,

        Defendant-Movant.

## PROPOSED FINDINGS
## AND
## RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Manuel Ruiz's ("Mr. Ruiz's") Motion

Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in

Federal Custody, filed October 16, 2019 (*Doc. 136*[1]), and on Mr. Ruiz's Motion for

Evidentiary Hearing and Appointment of Counsel,[2] filed March 2, 2020 (*Doc. 140*). The

Honorable Judith C. Herrera referred this matter to me on April 30, 2020, to conduct

hearings, if warranted, including evidentiary hearings, and to perform any legal analysis

required to recommend to the Court an ultimate disposition of the case. CIV 19-0976

JCH/KBM, *Doc. 7.*

---

[1] Unless otherwise noted, all referenced documents are from Mr. Ruiz's Criminal Case, CR 16-1432 JCH.  Some of the referenced documents, but not all, were also filed in in Mr. Ruiz's Civil Case, CIV 19-0976 JCH/KBM.

[2] Although Mr. Ruiz entitled his filing "*Petition* for Evidentiary Hearing and Appointment of Counsel," the Court refers to it, instead, as a "*Motion* for Evidentiary Hearing and Appointment of Counsel," in order to minimize confusion in the context of this habeas corpus proceeding.

Having considered the parties' submissions, the relevant law, and the record in this case, the Court recommends that the claims raised in Mr. Ruiz's § 2255 motion be denied and that this case be dismissed with prejudice. The Court finds an evidentiary hearing unnecessary, because Mr. Ruiz's motion and the record of the case conclusively establish that Defendant is entitled to no relief. *See* 28 U.S.C. § 2255(b) (a court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief") Additionally, considering the merits of Mr. Ruiz's § 2255 motion, the nature of the factual issues involved, the complexity of the legal issues he has raised, and his ability to present his claims, *see Long v. Shillinger*, 927 F.2d 525, 527 (10th Cir. 1991), the Court is satisfied that the circumstances do not merit appointment of counsel. Accordingly, the Court recommends that Mr. Ruiz's Motion for Evidentiary Hearing and Appointment of Counsel also be denied.

I.      **Procedural History Background**

Pursuant to an April 12, 2016 Indictment returned by a Federal Grand Jury in the District of New Mexico, Mr. Ruiz and his co-defendant, Troy Begay, were charged with Distribution of Methamphetamine and Aiding and Abetting. *Doc. 2*. Although the caption of the Indictment suggested that Mr. Ruiz's drug distribution charge was pursuant to 21 U.S.C. §§ 841(a)(1) and **(b)(1)(B)**, the body of the Indictment indicated that the Grand Jury had charged him with violating 21 U.S.C. §§ 841(a)(1) and **(b)(1)(C)**. *See id.* Section 841(b)(1)(C) is a Class-C felony, for which the penalties include a term of incarceration of up to 20 years. *See* 21 U.S.C. § 841(b)(1)(C). However, according to the United States, Mr. Ruiz would have been charged under § 841(b)(1)(B) but for a

2

"typographical error." *Doc. 117* at 13; *see also Doc. 125* at 1. Section 841(b)(1)(B) carries more severe penalties, including a term of imprisonment between 5 and 40 years. *See* 21 U.S.C. § 841(b)(1)(B).

Following his Indictment, this Court issued an Arrest Warrant for Mr. Ruiz on April 13, 2016.[3] *Doc. 3.* Mr. Ruiz was arrested in the Southern District of California the following month. *Doc. 17.* After being transferred to the District of New Mexico, Mr. Ruiz appeared before this Court on June 27, 2016. *Doc. 21.* The Court appointed Attorney Ahmad Assed to represent Mr. Ruiz. *Docs. 20*; *24.* Mr. Ruiz initially entered a plea of "not guilty" to all counts in the Indictment. *Doc. 27.*

Mr. Ruiz moved the Court to issue an order committing him to the custody of the Attorney General for the purpose of conducting an inpatient competency evaluation by the Federal Bureau of Prisons. *Doc. 43.* The Court granted that motion (*Doc. 49*), and on May 12, 2017, the Court received a Forensic Evaluation from Jeremiah Dwyer, Ph.D., at the Federal Detention Center in Englewood, Colorado (*Doc. 57*). Dr. Dwyer indicated that he was unable to make a formal diagnosis or assessment of Mr. Ruiz's competency, and he opined that "more comprehensive participation in the evaluation process would allow for more conclusive opinions." *Id.* at 24. On July 18, 2017, the Court ordered transportation of Mr. Ruiz to a federal medical facility for further evaluation and treatment. *Doc. 66.*

Nine months later, the Court received a Forensic Evaluation authored by Drs. Allissa Marquez, Ph.D., and Tracy Pennuto, Ph.D., J.D., of the Federal Medical Center in Butner, North Carolina, as well as a Certificate of Restoration of Competency to

---

[3] The Arrest Warrant, in contrast to the Indictment, listed the charged drug distribution offense as 21 U.S.C. §§ 841(a)(1) and **(b)(1)(B)**.

Stand Trial for Mr. Ruiz. *Doc. 79*. The Court ultimately entered an Order finding Mr. Ruiz competent to stand trial. *Doc. 90*.

Thereafter, Mr. Ruiz changed his plea, waiving his right to an indictment and pleading guilty to an Information charging him with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), for Distribution of Methamphetamine. *Docs. 104*; *107*; *117*. The Aiding and Abetting charge was omitted from the Information. *See Doc. 104*.

At his Plea Hearing before the Honorable Jerry H. Ritter, United States Magistrate Judge, Mr. Ruiz testified that he understood he was forfeiting his rights to a grand jury presentment, to the issuance of an indictment, to a jury trial, to the presumption of innocence, to confront witnesses against him, and to present his own evidence. *Doc. 117* at 4-5, 11-12. He assured the Court that he had not received any promises in exchange for his guilty plea and had not been threatened or forced to plead guilty. *Id.* at 11. When Judge Ritter asked Mr. Ruiz whether he understood that "with a plea . . . to this charge, without any kind of plea agreement, it's possible that the District Judge would give [him] the maximum sentence allowed by law," Mr. Ruiz responded, "Yes, sir." *Id.* at 14.

The United States advised the Court that Mr. Ruiz was "fac[ing] a term of imprisonment of not more than 20 years," and Mr. Ruiz testified that he understood this potential sentence. *Id.* at 13-14. Judge Ritter confirmed Mr. Ruiz's understanding that his attorney's advice was merely a "prediction [that] could turn out to be either correct or incorrect." *Id.* at 14. Additionally, Judge Ritter asked Mr. Ruiz if he understood that "the District Judge [could] impose a sentence that's higher than [the Sentencing] Guidelines or lower than those Guidelines," and Mr. Ruiz again responded that he understood. *Id.*

4

Mr. Ruiz testified that he was satisfied with the advice and representation of his attorney and that he felt Mr. Assed had devoted adequate time to explaining his case and answering his questions. *Id.* at 16. Judge Ritter found Mr. Ruiz "competent and capable of entering an informed plea" and "aware of the nature of the charge and the consequences of his plea." *Id.* at 22.  Accordingly, he determined that Mr. Ruiz's guilty plea was both knowing and voluntary. *Id.*

Following the Plea Hearing, the United States Probation Office ("USPO") prepared and disclosed a Presentence Report and an Addendum.[4] *Docs. 110; 113.* The Presentence Report assessed a base level offense of 28. *Doc. 110.* After application of enhancements and a reduction for acceptance of responsibility, the USPO assessed Mr. Ruiz's offense level at 32 and his criminal history category at II, resulting in a guideline range of 135-168 months. *Id.* at 18.

Mr. Assed filed Objections to the Presentence Report, maintaining that Mr. Ruiz's base offense level, properly calculated, was 26. *Doc. 125.* In fact, Mr. Assed explained that "Mr. Ruiz pled to the [I]nformation with the expectation that under the sentencing guidelines his sentencing exposure would be analyzed at an offense level of 26." *Id.* at 2. With respect to relevant conduct, Mr. Assed submitted that the Presentence Report had erroneously attributed to Mr. Ruiz drug amounts that were not part of the same course of conduct or common scheme or plan as the subject drug transaction. *Id.* at 4. Specifically, he argued that the drug quantities attributed to LeWayne Dennison and George Begay should not be applied toward the calculation of Mr. Ruiz's base offense

---

[4]The Addendum included information about head trauma that Mr. Ruiz sustained in 2014. *See Doc. 113.*

level. *Id.* In contrast, Mr. Assed conceded that the drug quantity attributed to Kirk

Castor, which he described as 41.69 grams of methamphetamine, could be attributed to

him as relevant conduct.[5] *Id.* According to the United States, Mr. Assed based his

guideline calculations on 30.58 grams actual methamphetamine sold by Mr. Ruiz on

March 30, 2016, and 41.69 grams methamphetamine sold by Kirk Castor, which

converted to 694.99 kilograms of marijuana. *Doc. 142* at 9.

Mr. Assed also objected to the proposed sentencing enhancements. He argued

against application of the firearm enhancement, insisting that the firearms at issue were

located in a residence that was not the site of the drug transaction and was not under

Mr. Ruiz's control. *Doc. 125* at 6. Mr. Assed also objected to the obstruction of justice

enhancement, arguing that the evidence did not show a willful attempt by Mr. Ruiz to

provide false information during court-ordered competency evaluations. *Id.* Finally, Mr.

Ruiz insisted that the enhancement for role adjustment was not warranted, because

there was no evidence to suggest that Mr. Ruiz directed or managed any other

defendant. *Id.* at 9-10.  According to Mr. Assed, after a two-level reduction for

acceptance of responsibility, "the proper guideline offense level in this matter should

[have been] 24." *Id.* at 10.

Following the filing of Mr. Ruiz's Objections, the USPO disclosed a Second

Addendum to the Presentence Report. *Doc. 129.* The Second Addendum explained that

"[a]t the time the [initial] presentence report was submitted, a lab report was not

available for Kirk Castor." *Id.* at 1. However, a subsequent lab report determined that

---

[5] In his Objections to the Presentence Report, Mr. Assed acknowledged, on behalf of Mr. Ruiz, that a "prior control[led] buy was arranged which involved Kirk Castor in which Mr. Castor was observed obtaining drugs from Mr. Ruiz and then providing them to a confidential source in Fruitland, NM." *Doc. 125* at 4.

the methamphetamine attributed to Mr. Castor tested at a 99.3 percent purity level. *Id*. Thus, according to the USPO, it followed from these lab results that the drug quantity attributed to Mr. Castor and thereby to Mr. Ruiz was 39.33 grams actual methamphetamine. *Id*. Given these lab results, the USPO revised the total drug quantity attributed to Mr. Ruiz to 69.9 grams of actual methamphetamine (30.58 grams sold by Mr. Ruiz and 39.33 grams sold by Castor), for a base offense level of 30. *Id.* The USPO explained that adding the drug quantities attributed to Mr. Dennison and Mr. Begay, 8.89 grams of actual methamphetamine and 51.92 grams of methamphetamine, respectively, did not alter Mr. Ruiz's base offense level, which remained at 30. *Id.* The Second Addendum removed the proposed firearm enhancement and determined that Mr. Ruiz's total offense level, after enhancements, was 32. *Id.* at 2.

Mr. Assed filed a Sentencing Memorandum, in which he urged the Court to depart and/or vary from the applicable sentencing guidelines to allow for a sentence of time served, or 40 months and 13 days. *Doc. 130* at 5. Mr. Assed offered several grounds for such a request on Mr. Ruiz's behalf:  a traumatic brain injury sustained in 2014; mental issues related to comprehension, memory, and depression; untreated drug dependence and abuse; his age of 49; and his forthcoming deportation. *Id.* at 5-9. In its own Sentencing Memorandum, the United States argued that Mr. Ruiz did not possess any of the enumerated conditions "to such a degree[,] alone or in combination, to merit any downward departure or variance." *Doc. 131* at 1. The United States suggested that the appropriate sentence was "at least 108 months." *Id.*

Mr. Ruiz appeared at a Sentencing Hearing before the Honorable Judith C. Herrera on September 17, 2019. *Docs. 132*; *133*; *141*. Mr. Assed advanced arguments

similar to those in the Objections and Sentencing Memorandum. *Doc. 141*. The Court overruled Mr. Ruiz's objection as to relevant conduct, agreeing with the USPO's analysis and its finding that Mr. Ruiz's base offense level, including relevant conduct, was 30. *Doc. 141* at 7. As to the firearm enhancement, the Court noted that the USPO removed the enhancement from its calculations and the United States conceded that it could not attribute the subject firearms to Mr. Ruiz. *Id.* at 8. Accordingly, Judge Herrera sustained Mr. Ruiz's objection to the firearm enhancement. Id. In contrast, Judge Herrera overruled Mr. Ruiz's objections as to the proposed role adjustment and obstruction of justice enhancement, as she was persuaded by the analyses of the USPO and the United States that these enhancements were warranted. *Id.* at 11, 48.

Beginning at a base offense level of 30, adding two points for Mr. Ruiz's role in the offense and two points for obstruction of justice, subtracting three points for acceptance of responsibility, and accounting for his criminal history category II, the United States recommended a guideline range of 121 to 151 months imprisonment. *See id.* at 43-44. Judge Herrera adopted the factual findings of the Presentence Report and considered the applicable sentencing guideline and the sentencing factors set forth in 18 U.S.C. § 3553(a). *Id.* at 57. Explaining that she had initially been inclined to apply the higher guideline range of 135 to 168 months, Judge Herrera ultimately agreed with the United States that 121 to 151 months of incarceration was the appropriate guideline range. *Doc. 141* at 57. She imposed a sentence at the low end of that range, however, of 121 months. *Id.* Judge Herrera advised Mr. Ruiz that he had the right to appeal his sentence within 14 days of entry of judgment. *Id.* at 59.

On October 16, 2019, Mr. Ruiz filed the subject § 2255 Motion, asking the Court to vacate his sentence and place him at the "presentence stage" of proceedings in his criminal case. *Doc. 136* at 4.

On January 21, 2020, Mr. Ruiz filed a Motion for Immediate Release in his criminal case. *Doc. 138*. In support, he maintained that because the Court had dismissed his Indictment and he had not been served with a superseding indictment, he should be released from custody. *Id.* In a January 24, 2020 letter,[6] Mr. Assed's office advised Mr. Ruiz that his motion suggested that he was "misunderstanding the procedure related to [his criminal] case." *Doc. 140* at 4. The letter noted that Mr. Ruiz pled guilty to an Information, which was a charging document that had been substituted for the original Indictment in his case. *Id.* It went on to explain that once the Information was filed, the Indictment was dismissed, and Mr. Ruiz's sentence was based upon only the Information. *Id.* Mr. Assed's office attached to the correspondence both an unsigned, unfiled plea agreement as well as the file-stamped, signed Information to demonstrate "how the two are tied together." *Id.* at 4-16.

In a subsequent filing, Mr. Ruiz requested an evidentiary hearing and the appointment of counsel. *Doc. 140* at 1. He maintained that Mr. Assed failed to clearly explain the sentencing process to him or to convey a proposed plea agreement from the United States. *Id.* He also attached documents in support of his ineffective assistance of counsel claims, including the January 24, 2020 letter from Mr. Assed's office, the

---

[6] The January 24, 2020 letter from Mr. Assed's office to Mr. Ruiz was filed as an attachment to the Motion for Evidentiary Hearing and Appointment of Counsel, which Mr. Ruiz filed in his § 2255 case on March 2, 2020. *See Doc. 140* at 4.

unexecuted plea agreement, and a Waiver of Indictment, which he indicated Mr. Assed advised was "just a paper to correct a typelgraphical [sic] error." *Id.* at 2-16.

The United States responded to Mr. Ruiz's § 2255 Motion on March 24, 2020. *Doc. 152*. To date, Mr. Ruiz has not filed a reply, and the time for doing so has expired.

## II. **Legal Standard**

Section 2255 provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

§ 2255(a). Mr. Ruiz does not contend that the Court was without jurisdiction or that his sentence exceeds the maximum authorized by law. Therefore, under § 2255(a), he must demonstrate that his sentence is "otherwise subject to collateral attack." *See id.*

Because Mr. Ruiz is proceeding *pro se*, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007).

## III. **Discussion**

Mr. Ruiz advances the following grounds for relief in his § 2255 Motion: (1) that he was subject to ineffective assistance of counsel when his attorney "failed to thoroughly engage in plea negotiat[ions]" and advised him to plead guilty; (2) that he thought he "was pleading guilty to one count of the sale of 33.0 grams of methamphetamine[,] which put him at offense level 24 with criminal history II, for an exposure of 57-71 months per federal sentencing guidelines"; (3) that the "Court

departed upward from the advisory guidelines without aggravating factors"; (4) that he "should [have been] given the opportunity to present 'Booker variances'" at sentencing; and (5) that the "Sentencing Court . . . abused its discretion when it sentenced [him] to 120 months," where his "characteristics . . . add additional support for a downward variance." *Doc. 136* at 4-5, 7, 8. Additionally, in his Motion for Evidentiary Hearing and Appointment of Counsel, Mr. Ruiz argues that Mr. Assed rendered ineffective assistance of counsel by failing to apprise him of a plea agreement offer from the United States. *Doc. 140.* From Mr. Ruiz's arguments, the Court identifies four ineffective assistance of counsel claims, three at plea stage and one at the sentencing stage, as well as a claim that he was subject to an unlawful sentence.

### A.  Ineffective Assistance of Counsel Claims

In order to prevail on his ineffective assistance of counsel claims, Mr. Ruiz must demonstrate under the first prong of the analysis pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), that his counsel, Mr. Assed, failed to render "reasonably effective assistance." *See id.* at 687. Courts give "considerable deference to an attorney's strategic decisions." *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002). Likewise, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir. 1994). In order to qualify as deficient, an attorney's performance must be "completely unreasonable, not merely wrong." *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010) (quoting *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999)). A § 2255 movant "bears a heavy burden" to overcome

the presumption of reasonable performance. *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000) (citation omitted).

The Court perceives four sub-arguments within Mr. Ruiz's broader ineffective assistance of counsel claims. He appears to suggest that his trial counsel, Mr. Assed, was infective:  1) when he advised Mr. Ruiz to plead guilty and failed to engage in plea negotiations; 2) when he estimated Mr. Ruiz's applicable sentencing guideline range; 3) when he failed to apprise Mr. Ruiz of a proposed plea agreement from the United States; and 4) when he failed to advance arguments for departure/variance to the sentencing court.

### 1. Mr. Ruiz fails to assert a viable claim that Mr. Assed rendered ineffective assistance of counsel at the plea stage by failing to thoroughly engage in plea negotiations and advising him to plead guilty.

Mr. Ruiz argues that Mr. Assed rendered ineffective assistance of counsel during the plea stage by failing to thoroughly engage in plea negotiations and by offering unsound advice. *Doc. 136* at 4. Specifically, he contends that Mr. Assed advised him that "it was in his best interest to accept the plea agreement offered by the prosecution." *Id.* But, confusingly, the record shows that there was no plea agreement entered in this case. *See Docs. 110* at 4; *117*; *141*. Nor were there any references to a plea agreement at Mr. Ruiz's Plea Hearing or Sentencing (*see Docs. 117*; *141*), though the record does suggest that plea negotiations took place between the United States and Mr. Assed (s*ee Doc. 142* at 7). It is possible, perhaps even likely, that Mr. Ruiz intends to assert that Mr. Assed was ineffective in advising him to plead guilty to *the Information*, rather than to the plea agreement. After all, it was the Information, not a plea agreement, to which Mr. Ruiz ultimately pled. Further, Mr. Ruiz's Motion for Immediate Release

demonstrates that he at times had difficulty understanding the nomenclature and effect of legal documents in his criminal case, particularly the Information to which he pled.[7] *See Doc. 138* at 1. Nevertheless, construing Mr. Ruiz's claims liberally, the Court will analyze both a claim that Mr. Assed was ineffective in advising Mr. Ruiz to plead guilty to the Information *and* a claim that Mr. Assed was ineffective in advising him to accept a plea agreement offered by the United States.  The Court begins with the former claim here, with the analysis of the latter claim following at Part III(A)(3).

The April 12, 2016 Indictment, as written, charged Mr. Ruiz with violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *See Doc. 2*. The United States explains that prior to Mr. Ruiz's guilty plea, it "notified defense counsel of its intention to supersede the indictment and correct the error contained therein." *Doc. 6* at 7 n.1. According to the United States, Mr. Ruiz's Indictment should have charged a violation of 21 U.S.C. § 841(b)(1)(B), for which the penalties are more severe and include a term of imprisonment of 5 to 40 years. *Doc. 117* at 13; *see also* § 841(b)(1)(B). While unsworn representations of a federal prosecutor do not constitute evidence, the United States' explanation – that the § 841(b)(1)(B) charge was an error that the United States intended to correct by superseding indictment – is supported by the record here.

First, the Indictment itself referenced both § 841(b)(1)(B) and § 841(b)(1)(C) in a contradictory fashion. *See Doc. 2*. The caption referenced a violation of § 841(b)(1)(B), while the body of the document indicated that the Grand Jury charged Mr. Ruiz under

---

[7] As detailed above, Mr. Ruiz's Motion for Immediate Release urged the Court to release him from custody, given that his Indictment had been dismissed and he had not been served with a superseding indictment. *Doc. 138*. Mr. Assed followed up with Mr. Ruiz to explain that the Indictment was dismissed upon the filing of the Information and that his sentence was based upon the Information rather than the Indictment. *See Doc. 140* at 4.

§ 841(b)(1)(C). *See id.* Additionally, in his filings in this habeas action, Mr. Ruiz himself acknowledged that Mr. Assed had advised him that his initial Indictment contained a typographical error. *See Doc. 140* at 2. In the filings in his criminal case, Mr. Ruiz, through counsel, even regarded the charges against him as including a violation under § 841(b)(1)(B). Specifically, in his Objections to the Presentence Report, Mr. Assed explained that the Indictment charged Mr. Ruiz under § 841(b)(1)(B) and that pleading guilty to the Information, which charged a violation of § 841(b)(1)(C), "conferred a benefit to Mr. Ruiz in that he was pleading to a lesser drug offense in which a sentence of less than five (5) years [was] possible." *Doc. 125* at 1. Given that the Indictment, like the subsequently-filed Information, charged a violation of § 841(b)(1)(C) rather than § 841(b)(1)(B), this evaluation by counsel only makes sense in the context of the contemplated superseding indictment. The superseding indictment would have elevated Mr. Ruiz's charges and increased his penalties, to include a mandatory 5-year statutory minimum under § 841(b)(1)(B). But, as the record confirms, Mr. Ruiz instead pled guilty to the Information charging him with a violation of § 841(b)(1)(C) before any superseding indictment was filed. *See Docs 104*; *107*; *117*. In its response to Mr. Ruiz's § 2255 Motion, the United States confirms that Mr. Ruiz was given the benefit of pleading to a violation of § 841(b)(1)(C) as a result of "subsequent negotiations with defense counsel." *Doc. 142* at 7.

At his Plea Hearing, Mr. Ruiz testified under oath that he understood the potential penalties associated with a conviction under § 841(b)(1)(C) to include a term of imprisonment of up to 20 years. *Doc. 117* at 13-14. Mr. Ruiz also assured the Court that he was satisfied with the advice and representation of Mr. Assed and that Mr. Assed

had devoted adequate time to explaining his case and answering his questions. *Id.* at 16.

Under these circumstances, any claim that Mr. Assed rendered ineffective assistance of counsel in advising Mr. Ruiz to plead guilty to the Information necessarily fails. Given the anticipated superseding indictment, which would have charged Mr. Ruiz under § 841(b)(1)(B) rather than § 841(b)(1)(C), any advice by Mr. Assed to plead guilty to the Information was objectively reasonable. Moreover, even setting aside the potential for a superseding indictment, the Information to which Mr. Ruiz pled charged fewer violations than the Indictment, as it removed the charge for Aiding and Abetting under 18 U.S.C. § 2. *Compare Doc. 2*, *with Doc. 104*. As such, pleading guilty to the Information conferred a benefit even beyond avoiding § 841(b)(1)(B)'s 5-year statutory minimum.

To the extent Mr. Ruiz contends Mr. Assed rendered ineffective assistance of counsel by advising him to plead guilty to the Information, he fails to overcome the presumption of adequate assistance. Likewise, Mr. Ruiz has failed to articulate any prejudice suffered by pleading guilty to the Information. Indeed, Mr. Ruiz does not even assert that he would not have pled guilty had Mr. Assed performed in a different manner. Accordingly, the Court recommends that the Court deny this claim.

### 2. Mr. Ruiz fails to assert a viable claim for ineffective assistance of counsel at the plea stage on the basis that Mr. Assed offered an inaccurate estimation of his offense level and sentencing guideline range.

Next, Mr. Ruiz maintains that he thought he "was pleading guilty to one count of the sale of 33.0 grams of methamphetamine[,] which put him at offense level 24 with criminal history II, for an exposure of 57-71 months per federal sentencing guidelines."

*Doc. 136* at 4. Mr. Ruiz insists that the sentence imposed "was not the agreement[8] that was reached and therefore constitutes the ineffectiveness of defense counsel." *Id.* at 4. In making these arguments, Mr. Ruiz appears to suggest that Mr. Assed erroneously estimated his exposure under the sentencing guidelines and thereby rendered ineffective assistance of counsel.

Significantly, a defendant's erroneous expectation as to his sentence, even derived from the opinions of counsel, generally does not render his plea involuntary or demonstrate constitutionally defective representation. *See Fields v. Gibson*, 277 F.3d 1203, 1213 (10th Cir. 2002). Indeed, erroneous sentencing guideline predictions by counsel do not generally rise to the level of ineffective assistance of counsel. *See United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993). Thus, an expectation by Mr. Ruiz that his applicable sentencing guideline range was between 57 and 71 months does not necessarily render his plea involuntary or his counsel's representation constitutionally deficient. Indeed, the colloquy between Judge Ritter and Mr. Ruiz assured that Mr. Ruiz understood that the Court was not bound to impose a specific sentence. After being advised that his term of imprisonment could be as long as 20 years, Mr. Ruiz proceeded with his guilty plea. *See Doc. 117* at 13-14. Mr. Ruiz does not allege that he was threatened or coerced into pleading guilty. That the sentence ultimately imposed by Judge Herrera was longer than what Mr. Ruiz expected does not render his plea constitutionally invalid or Mr. Assed's representation ineffective. *See*

---

[8] It is unclear whether Mr. Ruiz is referring to an "agreement" allegedly reached with the United States concerning his base offense level, such as through the plea agreement discussed hereinafter, or to an "agreement" that he reached with Mr. Assed that he would plead guilty to the Information given Mr. Assed's sentencing predictions. For purposes of this sub-argument, the Court assumes the latter. It addresses the plea agreement, including the proposed term concerning a recommended base offense level, in Part III(A)(3) below.

*Fields*, 277 F.3d at 1216 (concluding that although the state habeas petitioner's attorneys "strongly urged" him to enter a blind plea, they did not coerce him to do so, and the petitioner therefore failed to demonstrate deficient performance); *Gardner v. McKune*, 242 F. App'x 594, 597 (10th Cir. 2007) (holding that the petitioner's erroneous expectation that a shorter sentence would be imposed, due to a miscalculation of his criminal history by the court service officer and his attorney, did not render his plea involuntary).

Although there are circumstances under which counsel's guideline miscalculation may constitute ineffective assistance of counsel, those circumstances do not appear to be present here. That is, there is no allegation by Mr. Ruiz that would support a finding that Mr. Assed communicated erroneous sentencing estimates to Mr. Ruiz as a reckless promise of a specific sentence. *Cf. Wellnitz v. Page*, 420 F.2d 935, 936 (10th Cir. 1970) (reasoning that if an attorney "recklessly promises" a specific sentence, his representation may be deemed constitutionally ineffective). Mr. Ruiz testified at his Plea Hearing that he understood (1) that he was facing a term of imprisonment of up to 20 years; (2) that his attorney's advice was merely a "prediction [that] could turn out to be either correct or incorrect"; and (3) that "the District Judge [could] impose a sentence that's higher than [the Sentencing] Guidelines or lower than those Guidelines." *Doc. 117* at 14. This testimony suggests that Mr. Ruiz's guilty plea was not made subject to a reckless promise of a specific sentence.

Notably, Mr. Ruiz's expectation that he qualified for an offense level of 24 is consistent with the arguments Mr. Assed advanced on his behalf in the Objections to the Presentence Report filed by Mr. Assed. In the Objections, Mr. Assed argued that Mr.

Ruiz's base offense level, properly calculated, was 26. *Doc. 125*. After arguing against the application of various sentence enhancements and applying a two-level reduction for acceptance of responsibility, Mr. Assed suggested that the "the proper guideline offense level in this matter should [have been] 24." *Id.* at 10. Mr. Assed argued that, in calculating Mr. Ruiz's base offense level, the USPO erroneously attributed to Mr. Ruiz drug amounts that were not part of the same course of conduct or common scheme or plan as the subject drug transaction, including quantities attributed to LeWayne Dennison and George Begay. *Id.* at 4. He conceded, in contrast, that the drug quantity attributed to Kirk Castor could be attributed to Mr. Ruiz as relevant conduct. *Id.*

But, critically, after Mr. Assed filed the Objections to the Presentence Report, the USPO disclosed a Second Addendum to the Presentence Report, which changed the sentencing calculus. *See Doc. 129*. The September 2, 2019 Addendum explained that "[a]t the time the [initial] presentence report was submitted, a lab report was not available for Kirk Castor." *Id.* at 1. A subsequent lab report revealed that 39.33 grams of methamphetamine had been sold by Castor, bringing the total drug quantity attributed to Mr. Ruiz to 69.9 grams of methamphetamine (30.58 grams sold by Mr. Ruiz and 39.33 grams sold by Castor), for a base offense level of 30. *Id.* The new lab report altered Mr. Ruiz's base offense level and, in turn, his sentencing guideline range. This begs the question whether any failure by Mr. Assed to anticipate this lab report or the subsequent increase in Mr. Ruiz's offense level and guideline range may have constituted ineffective assistance of counsel. The Tenth Circuit's analysis in *United States v. Gordon* helps answer that question.

In *Gordon*, the defendant moved to withdraw his plea, arguing that his attorney's failure to accurately predict his sentence constituted ineffective assistance of counsel. 4 F.3d at 1568-69. Following negotiations with the United States, the defendant pled guilty to a drug offense charged in an indictment in exchange for the dismissal of other counts. *Id.* at 1568. After the defendant's plea but prior to sentencing, the USPO prepared a presentence report which determined that the defendant's offense level should be raised by six levels to account for relevant conduct, specifically drug quantities involved in the dismissed counts. *Id.* at 1569. Defense counsel objected to the USPO's inclusions of these quantities and filed a motion to withdraw the defendant's plea, explaining that he had opined that the defendant would not be assessed a relevant conduct adjustment for the drugs involved in dismissed counts. *Id.* On appeal, the defendant asserted that his guilty plea was involuntary due to his original counsel's ineffective assistance in inaccurately predicting his sentence. *Id.*

The Tenth Circuit concluded that the defendant failed to demonstrate that his "counsel's failure to predict the relevant conduct inclusion in his offense level constituted ineffective assistance of counsel entitling him to relief." *Id.* at 1570. The court reasoned that "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to a level of ineffective assistance of counsel." *Id.* (citing *United States v. Estrada*, 849 F.2d 1304, 1307 (10th Cir. 1988); *Wellnitz*, 420 F.2d at 936; *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990); *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990)). Turning to the second prong of the *Strickland* analysis, the court in *Gordon* concluded that the defendant failed to show prejudice, because the trial court had informed him that its

19

"final calculation of [the d]efendant's sentence may differ from any calculation made by his attorney." *Id.* at 1571.

Here, it appears that Mr. Assed may have failed to appreciate that Mr. Ruiz's base offense level might increase to 30 to account for the 39.33 grams of actual methamphetamine sold by Mr. Castor but attributed to Mr. Ruiz. Pursuant to *Gordon*, though, such a failure does not rise to the level of ineffective assistance of counsel. Further, because Judge Ritter ensured that Mr. Ruiz understood that his attorney's sentencing advice was a mere "prediction," Mr. Ruiz fails to establish prejudice. In sum, the Court is satisfied that Mr. Assed's sentencing guideline calculations were objectively reasonable and do not constitute ineffective assistance of counsel and therefore recommends denial of this claim.

### 3. Mr. Ruiz fails to assert a viable claim for ineffective assistance of counsel on the basis that Mr. Assed failed to apprise him of a proposed plea agreement from the United States.

As explained above, there was no plea agreement entered in this case. Nevertheless, an unsigned, unfiled plea agreement has surfaced in this habeas action. Mr. Ruiz submitted the plea agreement as an attachment to his Motion for Evidentiary Hearing and Appointment of Counsel, explaining: "Attached is a letter from attorney Ahmad Assed & Associates and a plea agreement that was never shown to defendant Manuel Ruiz or signed therefor[e] he never knowignly [sic] and willfully accept[ed] this agreement." *Doc. 140* at 2. In the referenced correspondence, Mr. Assed's office explained that it was attempting to clarify the procedures in Mr. Ruiz's case and to show him how the unsigned plea agreement and the signed Information were "tied together." *Id.* at 4. Mr. Ruiz asserts that the failure of Mr. Assed to present him with the proposed

plea agreement "was a clear representation of ineffective assistance of counsel." *Id.* at 2. But his position concerning the plea agreement is inconsistent at best. On the one hand, Mr. Ruiz suggests that Mr. Assed unreasonably failed to convey the proposed plea agreement. *Id.* On the other hand, he argues that Mr. Assed unreasonably advised him to accept a plea agreement offered by the United States. *Doc. 136* at 4. The United States has not addressed Mr. Ruiz's plea agreement claims, other than to note that there was no plea agreement in effect at the time of Mr. Ruiz's sentencing. *See Doc. 142* at 7.

To the extent Mr. Ruiz argues that Mr. Assed unreasonably advised him to accept the proposed plea agreement, his ineffective assistance of counsel claim fails. Mr. Ruiz cannot demonstrate prejudice from such advice, given that he did not, in fact, enter into the proposed plea agreement. *Strickland*, 466 U.S. at 687 (explaining that even if a plaintiff can establish deficient performance of counsel, they must also "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). However, to the extent Mr. Ruiz maintains that Mr. Assed failed to adequately apprise him of the proposed plea agreement, either by offering inadequate advice concerning the proposed agreement or by failing to convey the agreement altogether, his claim requires a more thorough analysis.

There is no question that defense counsel has a duty to communicate plea offers to his client. *See Missouri v. Frye*, 566 U.S. 134, 139 (2012). Indeed, the Tenth Circuit has reasoned:

> [I]n the ordinary case criminal defense attorneys have a duty to inform their clients of plea agreements proffered by the prosecution, . . . [and] failure to

21

do so constitutes ineffective assistance of counsel. . . . Apart from merely being informed about the proffered agreement, . . . a defendant must be involved in the decision-making process regarding the agreement's ultimate acceptance or rejection.

*United States v. Morris*, 106 F. App'x 656, 658 (10th Cir. 2004) (quoting *United States v. Golden*, 102 F.3d 936, 943 (7th Cir. 1996)).

Here, the record clearly demonstrates that Mr. Ruiz did not enter into a plea agreement. Yet, there are other issues relevant to Mr. Ruiz's ineffective assistance claim that cannot be resolved on the present record. First, the record does not reveal the extent to which Mr. Assed apprised Mr. Ruiz of the proposed plea agreement. Likewise, the record does not indicate whether Mr. Assed involved Mr. Ruiz in any decision to reject the agreement. For his part, Mr. Ruiz asserts that during the "sentencing process [he] asked Mr. Ahmad Assed to explain more clearly[,]" but Mr. Assed failed to "explain any of the process in a legal or proper manner" and would instead respond "Trust Me." *Doc. 140* at 2 (quotation marks omitted). However, this contention is contradicted by Mr. Ruiz's testimony at the Plea Hearing, where he testified that he was satisfied with the advice and representation of his attorney and that Mr. Assed had devoted adequate time to explaining his case and answering his questions. *Doc. 117* at 16. Finally, the record does not indicate whether any plea agreement offer was withdrawn by the United States or rejected by Mr. Ruiz prior to his guilty plea.

A showing by Mr. Ruiz that Mr. Assed failed to convey the proposed plea agreement or, alternatively, that he failed to involve Mr. Ruiz in the decision-making process regarding the agreement's acceptance would satisfy only the first prong of his ineffective assistance of counsel claim. Mr. Ruiz must also establish prejudice – that is,

"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687. More specifically, Mr. Ruiz must demonstrate a reasonable probability that (1) he would have accepted the plea agreement offer had he been afforded effective assistance by Mr. Assed; (2) the prosecution would not have withdrawn the proposed plea agreement and the Court would have accepted it, *and* (3) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *See Frye*, 566 U.S. at 147; *see also Lafler v. Cooper*, 566 U.S. 156, 160 (2012); *United States v. Orozco-Sanchez*, No. 19-2009, 2020 WL 1074307, at *5 (10th Cir. Mar. 6, 2020). The Court may focus on either prong of the ineffective assistance claim and need not examine both prongs if one is satisfied. *See Strickland*, 466 U.S. at 697. For purposes of Mr. Ruiz's plea agreement claim, the Court focuses on the prejudice prong.

Mr. Ruiz's ability to assert a viable ineffective assistance claim here turns on his ability to satisfy the third prejudice requirement: the end result of his criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. See *Frye*, 566 U.S. at 147. Notably, the unsigned plea agreement would have obligated Mr. Ruiz to plead guilty to a violation of 21 U.S.C. § 841(b)(1)(C), the same drug trafficking provision to which he ultimately pled. *Compare Doc.* 140 at 7-16, *with Doc. 104*. Thus, Mr. Ruiz cannot establish that absent ineffective assistance surrounding the proposed plea agreement he would have pled to a lesser charge. The outstanding question, then, is whether he can establish a reasonable probability that the Court would have imposed a shorter term of imprisonment had the plea agreement been executed by the parties.

One term of the plea agreement stands out as potentially significant in this regard. The proposed plea agreement provides that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B),[9] the United States and Mr. Ruiz recommend: "At least 20 grams but less than 35 grams of actual methamphetamine are attributable to the Defendant. Accordingly, the parties agree that the Defendant's base offense level under the sentencing guidelines is 26, pursuant to USSG § 2D1.1(c)(7)." *Doc. 140* at 10. The Drug Quantity Table, available at U.S.S.G. § 2D1.1(c)(7), confirms that for defendants convicted of trafficking between 20 and 35 grams of actual methamphetamine, as Mr. Ruiz was here, the base offense level of 26 applies. *See* U.S.S.G. § 2D1.1(c)(7). However, with no plea agreement in place, the United States advocated for the higher base offense level of 30. *See*, *e.g.*, *Docs. 127* at 4; *141* at 7, 43-44. At first blush, it seems at least plausible that the Court might have imposed a shorter sentence, applying a lower guideline range, if the United States was obligated under the terms of the plea agreement to recommend a base offense level of 26 rather than 30.

Critically, however, the proposed plea agreement clarified that the obligation of the United States to recommend a base level offense of 26 *excepted relevant conduct*. It provided: "[T]he parties agree that the Defendant's base offense level under the sentencing guidelines is 26, pursuant to USSG § 2D1.1(c)(7). *This recommendation does not include any relevant conduct*." *Doc. 140* at 10 (emphasis added). Elsewhere in the agreement, the United States "reserve[d] the right to provide to the [USPO] and to

---

[9] Federal Rule of Criminal Procedure 11 provides that a plea agreement may specify that a government attorney will "recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court)." Fed. R. Crim. P. 11(c)(1)(B).

the Court any information the United States believes may be helpful to the Court, including but not limited to information about the recommendations contained in this agreement *and any relevant conduct under USSG § 1B1.3.*" *Id.* at 11-12 (emphasis added). In short, the proposed plea agreement would have required the United States to recommend a base offense level of 26 based upon the drug quantities involved in Mr. Ruiz's offense of conviction; however, it left open the possibility that drug quantities from Mr. Ruiz's relevant conduct could further increase his base offense level.

The law is clear. When calculating a defendant's base offense level, a sentencing court looks beyond the charges alleged in the indictment and includes quantities of drugs from "relevant conduct," or those that were "part of the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Barela*, 973 F.2d 852, 856 (10th Cir. 1992) (citing U.S.S.G. § 1B1.3(a)(2)). A defendant need not have been convicted of trafficking the additional quantities attributed to them as relevant conduct. *United States v. Boyd*, 901 F.2d 842, 844 (10th Cir. 1990). Here, even Mr. Ruiz acknowledged that drug quantities from relevant conduct would factor into his base offense level. *See, e.g., Doc. 125* at 2-4 (acknowledging that relevant conduct, consisting of drug quantities attributable to Kirk Castor, would be applied toward calculating his base offense level).

As noted above, lab reports that became available following Mr. Ruiz's guilty plea revealed that the methamphetamine sold by Mr. Castor but attributed to Mr. Ruiz as relevant conduct tested at a 99.3 percent purity level, resulting in a drug quantity of 39.33 grams of actual methamphetamine. *Doc. 129* at 1. Adding this 39.33 grams of actual methamphetamine from Mr. Ruiz's relevant conduct to the 30.58 grams of actual

methamphetamine sold by Mr. Ruiz during the underlying offense, the USPO determined that the total drug quantity attributed to Mr. Ruiz for sentencing purposes was 69.9 grams of actual methamphetamine, for a base offense level of 30.[10] *Doc. 129* at 1. In short, although Mr. Ruiz's base offense level may have been 26 when restricted to the drug quantities involved in his offense of conviction, his base offense level was elevated to 30 when accounting for drug quantities from his relevant conduct.

Because the plea agreement excepted relevant conduct from the required recommended base offense level of 26, the United States' position in this case (i.e., that Mr. Ruiz's base offense level was 30) was consistent with the recommendation it would have been required to make under terms of the proposed plea agreement. In other words, even if the plea agreement had been executed, the United States would have still likely advocated for a base offense level of 30. At the same time, the plea agreement would have required additional concessions of Mr. Ruiz. For example, it would have precluded Mr. Ruiz from seeking a downward departure or variance from the applicable guideline range, and it would have required him to waive his right to appeal his conviction and sentence and also to consent to removal from the United States at the conclusion of his prison term. *See Doc. 140* at 13-14.

There is also nothing in the record to suggest that Judge Herrera would have imposed a lower sentence if Mr. Ruiz's guilty plea had been made pursuant to a plea agreement. The plea agreement itself acknowledged that the "recommendations [were] not binding on the Court and that whether the Court accepts these recommendations is

---

[10] Again, according to the USPO, adding the drug quantities attributed to Mr. Dennison and Mr. Begay, 8.89 grams of actual methamphetamine and 51.92 grams of methamphetamine, respectively, did not alter Mr. Ruiz's base offense level, which remained at 30. *Doc. 129* at 1.

a matter solely within the discretion of the Court after it has reviewed the presentence report." *Doc. 140* at 11. After considering the USPO's position, along with the arguments advanced by the United States and those made on behalf of Mr. Ruiz, Judge Herrera determined that Mr. Ruiz's base offense level was 30. *Doc.141* at 7. She added two points for Mr. Ruiz's role in the offense and two points for his obstruction of justice, and she subtracted three points for acceptance of responsibility. *Id.* at 11, 43-44, 48. After accounting for Mr. Ruiz's criminal history category of II, Judge Herrera determined that the applicable sentencing guideline range was 121 to 151 months. *Id.* at 57. She sentenced Mr. Ruiz at the far low end of that range, to 121 months imprisonment. *Doc. 133* at 2.

Under these circumstances, Mr. Ruiz cannot show a reasonable probability that, but for alleged plea agreement errors by Mr. Assed, he would have received a more favorable sentence. Indeed, the Court can conclusively resolve Mr. Ruiz's plea agreement claim, even without an evidentiary hearing, by examining the proposed plea agreement that Mr. Ruiz contends Mr. Assed never presented to him. Mr. Ruiz's claim of ineffective assistance for failure to adequately apprise him of the plea agreement is not a viable claim. As such, the Court recommends denial of this claim.

> **4. Mr. Ruiz fails to assert a cognizable claim that Mr. Assed rendered ineffective assistance of counsel at the sentencing stage by failing to offer arguments against sentencing enhancements or in favor of a downward variance.**

Mr. Ruiz maintains that he was denied the opportunity to present "Booker variances." *Doc. 136* at 7. Construed broadly, Mr. Ruiz appears to assert that Mr. Assed rendered ineffective assistance of counsel at the sentencing stage. However, any such argument is belied by the record.

27

The record demonstrates that Mr. Assed vigorously objected to the calculations in the Presentence Report. In written Objections filed prior to sentencing, Mr. Assed argued that Mr. Ruiz's base offense level was 26 rather than 28. *Doc. 125.* He asserted that the Presentence Report had erroneously attributed to Mr. Ruiz drug amounts that were not part of the same course of conduct or common scheme or plan as the subject drug transaction. *Id.* at 4. He also objected to the proposed enhancements for firearms, obstruction of justice, and role in the offense. *Id.* at 5-10.

Additionally, Mr. Assed filed a Sentencing Memorandum in which he urged the Court to depart and/or vary from the sentencing guidelines to allow for a sentence of time served, or 40 months and 13 days. *Doc. 130* at 5. Mr. Assed offered several grounds for such a request: a traumatic brain injury sustained in 2014; mental issues related to comprehension, memory, and depression; untreated drug dependence and abuse; his age of 49; and his forthcoming deportation. *Id.* at 5-9.

At sentencing, Mr. Assed advanced oral arguments consistent with those contained in the Objections and Sentencing Memorandum. *See Doc. 141.* The Court sustained Mr. Assed's objection to the firearms enhancement, resulting in a two-level reduction to Mr. Ruiz's offense level, but it overruled his objections to the role enhancement and the obstruction of justice enhancement. *See id.* at 8, 48. And after hearing arguments of counsel, the Court ultimately sentenced Mr. Ruiz to the low end of the applicable guideline range. *Id.* at 57.

The Court must give "considerable deference" to Mr. Assed's strategic decisions in presenting sentencing arguments to the Court. *See Bullock*, 297 F.3d at 1044. Mr. Assed is "strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of professional judgment." *See id.* The record does not provide support for Mr. Ruiz's conclusory assertion that Mr. Assed's representation at sentencing fell below an objective standard of reasonableness at sentencing. Mr. Ruiz fails to identify any objections or arguments that Mr. Assed should have made or to articulate how the results of the proceeding might have been more favorable if Mr. Assed had made such arguments to the Court. Notably, Mr. Assed's advocacy resulted in the removal of the firearms enhancement as well as a sentence at the low end of the guideline range. Therefore, Mr. Ruiz was benefited, rather than prejudiced, by Mr. Assed's objections and arguments at sentencing.

In sum, the record does not show that Mr. Assed's representation at sentencing fell below an objective standard of reasonableness, and the Court can discern no basis for § 2255 relief based upon Mr. Assed's performance at the sentencing stage. The Court, therefore, recommends denial of Mr. Ruiz's ineffective assistance of counsel claim based upon Mr. Assed's performance at sentencing.

### B. Mr. Ruiz's claims that the Sentencing Court abused its discretion in imposing his sentence are procedurally defaulted.

Mr. Ruiz argues that he "suffered a violation of due process" when the Court "departed upward from the advisory guidelines without aggravating factors." *Doc. 136* at 5. He goes on to assert that the "Sentencing Court . . . abused its discretion when it sentenced [him] to 120 months."[11] *Id.* at 8.

Significantly, though, Mr. Ruiz did not seek a direct appeal of his sentence. He instead sought relief from his sentence for the first time in this § 2255 action. *See Doc.*

---

[11] Although Mr. Ruiz suggests that he was sentenced to 120 months, the record demonstrates that he was sentenced to 121 months. *Doc. 133* at 2.

*136* at 2. The Tenth Circuit has held that "a defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994) (citing *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993)). In other words, "Section 2255 is not available to test the legality of matters which should have been raised on appeal." *Id.* (quoting *United States v. Walling*, 982 F.2d 447, 448 (10th Cir. 1992)). This procedural bar applies to a federal defendant's collateral attack on his sentence. *Id.* If the government raises a procedural bar, as the United States has here, the court must enforce it unless the movant shows cause and prejudice or a miscarriage of justice. *Id.*

Mr. Ruiz has failed to articulate any cause for his procedural default.  He has likewise failed to demonstrate that a fundamental miscarriage of justice would occur if the Court did not address his sentencing arguments in the context of this § 2255 motion. As such, he is barred from raising these claims in the context of a § 2255 motion.

Moreover, Mr. Ruiz's contention that the Court "departed upward" from the applicable guideline range is simply inaccurate. As explained above, Judge Herrera determined, over Mr. Ruiz's objections, that a two-level enhancement for his role in the offense was appropriate as was a two-level adjustment for obstruction of justice pursuant to U.S.S.G. § 3C1.1. *Doc. 141* at 11, 48. She also gave Mr. Ruiz a three-level reduction for acceptance of responsibility. *Id.* at 43-44, 50-51. Judge Herrera explained that she had been inclined to find an adjusted offense level of 32 and a sentencing guideline range of 135 to 168 months. *Id.* at 50. However, after hearing the arguments

of counsel, she agreed to apply the lower offense level of 31 and a sentencing guideline range of 121 to 151 months. *Id.* at 51. Ultimately, the Court imposed a sentence at the low end of that range. *See Docs. 133* at 2; *141* at 51. The Court did not, as Mr. Ruiz suggests, depart upward.

Mr. Ruiz's claims regarding his sentence are both procedurally barred and unmeritorious.  The Court, therefore, recommends the denial of these claims.

## IV.    Conclusion

For all of these reasons, the Court finds that the record conclusively establishes that Mr. Ruiz is not entitled to relief on any of his ineffective assistance of counsel claims.  Moreover, Mr. Ruiz's unlawful sentence claim is procedurally barred.

**IT IS HEREBY RECOMMENDED** that Mr. Ruiz's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed October 16, 2019 (*Doc. 136),* be denied and that his claims be dismissed with prejudice.

**IT IS FURTHER RECOMMEND** that Mr. Ruiz's Motion for Evidentiary Hearing and Appointment of Counsel, filed March 2, 2020 (*Doc. 140*) be denied.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.   If no objections are filed, no appellate review will be allowed.**

---

_____

UNITED STATES MAGISTRATE JUDGE